**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Day,<br><br>          Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-17-00575-TUC-LAB<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, pp. 1-2)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* Fed. R. Civ. P. 73; (Doc. 13)

The decision of the Administrative Law Judge (ALJ) at step 5 of the disability determination is not supported by substantial evidence. The case is remanded for payment of benefits.

Procedural History

On November 27, 2013, Day filed an application for disability insurance benefits pursuant to Title II and supplemental security income pursuant to part A of Title XVIII of the Social Security Act. (Tr. 186-187) He alleged disability beginning March 1, 2013, stemming from brain damage to the right frontal lobe, depression, left knee injury and diabetes. (Tr. 96) His application was denied originally (Tr. 131-134) and on reconsideration. (Tr. 136-138) He then appeared with counsel at hearings before ALJ

Peter J. Baum on December 2, 2015 and March 2, 2016. (Tr. 43-72, 72-94) The ALJ found that significant numbers of jobs existed that Day could perform in spite of his limitations and denied his claim on April 26, 2016 (Tr. 19-42). Day appealed and was denied review on September 28, 2017, making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-7)

Claimant Work History and Medical History

Day was born on February 9, 1968. (Tr. 39) He was 45 years old at the onset date of his alleged disability and 48 when the ALJ issued his decision in April of 2016. (Tr. 36) He last worked in March of 2013 at a call center. (Tr. 78, 88) He resigned due to health problems. *Id*. He has completed some college since, although he withdrew in 2014 due to pain issues. (Tr. 79-82) Days received a 10% disability rating for his left knee from the Veterans Administration and had tuition paid for plus a monthly stipend during the school year. (Tr. 82-83)

*Impairments*

On February 20, 2014, Jaine Foster-Valdez, Ph.D, and Marilyn Orenstein, M.D., analyzed Day's claim for the disability determination service. (Tr. 103) They diagnosed his impairments as follows: severe diabetes mellitus, non-severe cerebral trauma, non-severe sprains and strains, severe COPD and non-severe affective disorders. *Id*.

Foster-Valdez conducted Day's psychiatric review. Under the "A" criteria of listings, Day had a medically determinable impairment from an affective disorder that did not precisely satisfy diagnostic criteria. *Id*. Under the "B" criteria, which gauge severity, Day's affective disorder gave him moderate difficulty in maintaining social function but no other issues. *Id.* There were no "C" criteria established. *Id*.

Foster-Valdez also evaluated Day's Mental Residual Functional Capacity (RFC). (Tr. 96-110) Day was found to have social interaction limitations, but no understanding and memory or sustained concentration and persistence limitations. (Tr. 107) His ability to interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, and ability to get along with coworkers or peers without

distracting them or exhibiting behavioral extremes were all moderately limited. (Tr. 108) He had no other significant social interaction limits, or any adaptation limitations. *Id*.

Orenstein evaluated Day's Physical RFC, finding that he could frequently lift ten pounds, occasionally lift twenty, stand or sit for about six hours with breaks out of an eight-hour workday, and push or pull without restriction. (Tr. 105) She also found that Day had postural limitations due to his obesity, diabetes and left knee injury, and that he had various problems climbing ramps or stairs, balancing, stooping, kneeling, crouching or crawling. (Tr. 105-6) She recommended that Day avoid concentrated exposure to wetness, hazards, anything that might affect air quality or extreme cold. *Id*.

Randall J. Garland, Ph.D., reviewed the record on reconsideration for the disability determination service on June 18, 2014. (Tr.111) He diagnosed Day's affective disorders as severe. (Tr. 121) He found that in the "B" criteria of listings, Day now had mild restriction of activities of daily living and moderate difficulties in maintaining concentration, persistence or pace. *Id*. In the RFC accompanying this report, Garland found that Day was moderately limited in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 126)

*Hearings*

On December 2, 2015, Day appeared with counsel at a hearing before the ALJ. He testified that he last worked at a call center until he resigned in March of 2013 due to health problems. (Tr. 78, 88) He took some courses in web design at Pima Community College, although he withdrew for a time due to pain issues. (Tr. 79-82) At the time of the hearing, he was enrolled in several courses but regularly missed classes when he was unable to get out of bed due to pain. (Tr. 80) He would have to get up and leave his classes every 10 to 15 minutes when he felt overwhelmed by the number of people around or the noise. *Id*. His professors accommodated his needs, and he had no on-campus tests or presentations in front of the class. (Tr. 81) He withdrew in Spring 2014 when pain in his back and right hip left him unable to attend class. (Tr. 82) At the time of

the hearing, he was back in school despite continuing pain. *Id*.

Day received 10% disability from the VA and had tuition paid plus a monthly stipend during the school year. *Id*. He can be on his feet for ten to fifteen minutes before he loses balance from pain and either sits down or falls, after which he has to sit for ten to fifteen minutes. *Id*. He cannot stay sitting for a full 30 minutes, even in a comfortable chair. (Tr. 84) When he visits his mother-in-law in Yuma, he cannot drive but reclines in the front seat for fifteen to thirty minutes at a time. (Tr. 85) He needs pain medication to last a full thirty minutes and will not make the trip if he has not taken any. *Id*. He can only work at a computer for ten to twenty minutes at a time. *Id*.

In the past, Day has worked as an assistant engineer at a radio station, a security guard supervisor, an auto-repair shop manager and a call center worker. (Tr. 86-88) Only the last was a sedentary job. *Id*.

Day feels overwhelmed by groups of people both in class and in public. (Tr. 89) He has a panic attack every four to five weeks and will move people out of the way to escape. (Tr. 89-90) He has had arguments in public as a result. (Tr. 90)

Day was launched through a windshield face first in a car wreck when he was around seven or eight months old. *Id*. He had to have surgery on his brain and skull. *Id*. His doctor at the VA told him he has brain damage in his right frontal lobe as a result. *Id*. He testified to having a hard time concentrating around people or noise and having a bad memory. (Tr. 90-91)

Day also has trouble sleeping due to pain and has been diagnosed with sleep apnea (Tr. 91) His pain is mostly in his left knee, right hip and lower spine. *Id*. He has problems with ankle reflexes that he believes are due to his diabetes. (Tr. 92) His attorney and he believe he meets listings 12.02, 12.04 and 12.06. *Id*.

Day appeared with counsel before the ALJ a second time on March 2, 2016. (Tr. 43) He and his wife both claimed that his conditions have worsened since 2013. (Tr. 48) Between the two hearings, Day's performance in school declined because he cannot concentrate when he reads. *Id*. He also has problems with loud noises and when he is

"surrounded" by two or more people. *Id.* He claims it got worse that semester. *Id.*

The ALJ brought up VA records that indicate that Day had reported no back pain since an injection on his previous visit, that he was exercising with an Xbox and exercise ball, and that he was taking boxing classes. (Tr. 51) Day denied all of that and claimed not to know the doctor who wrote the report. (Tr. 52) He testified that he has been taking medication for nerve pain since late 2014. (Tr. 54). He cannot use stairs without pain. (Tr. 55)

Day had recently been seen for anxiety and panic attacks, which he has every time he leaves his house beginning February of 2016. (Tr. 53-54) He has trouble breathing, vomits and becomes agitated. (Tr. 53*)* He has lesser panic attacks in his home when he has to make any kind of decision. (Tr. 54) He had a panic attack before the hearing that caused him to forget the cane he uses to walk in case he falls. (Tr. 55) He testified that his problems with social interaction have gotten much worse, even with his wife and daughter. Chris Salvo, a vocational expert (VE), also testified at the hearing. (Tr. 57) He and the judge reviewed Day's work history and physical limitations. (Tr. 57-62) This included a question regarding a 2013 evaluation from Scott Krasner, M.D., who found that Day can only stand or walk for half an hour at a time, with a maximum of four hours standing in an eight-hour time period. (Tr. 61, 518)

The ALJ explained Day's mental limitations to the VE, stating that Day "should be able to meet the basic mental demands of semi-skilled work in low social context including the ability to perform complex duties or tasks, to maintain alertness and close attention, to understand, remember, and carry out detailed instructions, and to set realistic goals or make plans independently of others." (Tr. 61) The ALJ also stated that Day is "limited in interacting with the general public… in accepting instructions and responding appropriately to criticism from supervisors… in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes… [and] he reports anger issues." (Tr. 62) The ALJ added that "his necessary contact with co-employees and supervisors is at the most brief, superficial and intermittent. And that he has no necessary

contact with the general public or customers." *Id.*

The VE testified that one job Day could perform would be small products assembler, *DOT* code 706.684-022, which provides 17,500 job openings in the country. (Tr. 63) He then listed three optical goods industry jobs that total at least 9000 openings: Final assembler, *DOT* code 713.687-018; lensing server, *DOT* code 713,687-026; and eyeglass polisher, *DOT* code 713.684-038. (Tr. 63) He also recommended addresser, *DOT* code 209.587-010, which adds another 5000. (Tr. 63-65) When the ALJ asked about Day's trouble with concentration and being around multiple people, the VE testified that he would eliminate both of the assembly-type jobs and most of the addresser positions. (Tr. 65-66) He also testified that he eroded the job numbers for small products assembler by 50% to account for the need to shift between sitting and standing. (Tr. 67-68) The optical goods jobs would not need any erosion because they would allow for this. (Tr. 68)

Day's counsel asked if those jobs would tolerate employees being off task up to ten percent of the day. (Tr. 69) The VE stated that such an employee would be let go from those jobs. (Tr. 70) He also stated that these jobs would not allow agoraphobic employees to work from home, except for a small percentage of addressers. *Id*. All of the jobs were examined in a national context, with no particular analysis of regional availability. (Tr. 62-66)

Claim Evaluation

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id*.

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a

determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id*. Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC) to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found that there was no evidence that Day had engaged in substantial gainful activity since March 1, 2013, the alleged onset date. (Tr. 24) At step two of the disability analysis, he found that Day "has the following severe impairments: status post lower extremity fracture with surgical repair; bipolar disorder; diabetes mellitus." *Id*. He also found that Day had several other medically determinable impairments that "are stable with conservative treatment measures" and are considered non-severe. (Tr. 24-25) These included that Day had been

diagnosed with migraines and prescribed medication for them. (Tr. 25)

At step three of the disability analysis, the ALJ found that Day "does not have any impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 25) Specifically, the ALJ found that Day's mood disorder did not "satisfy the requirements for any listed mental impairments, including the closest analogous listing, 12.04, for affective disorders." (Tr. 26)

At step four of the disability analysis, the ALJ found that Day has the RFC to "perform light work as defined in 20 CFR 404.1567(b)… [and] should be able to meet the basic mental demands of semiskilled work in a low social context, including the ability to perform complex duties or tasks, maintain alertness and close attention, to understand, remember and carry out detailed instructions, and set realistic goals or make plans independently. [His] necessary contact with co-employees and supervisors should be at most brief, superficial and intermittent and [] he [should] have no necessary contact with the general public or customer[s] and not in proximity to 2 or more people." (Tr. 28-29)

The ALJ stated that "[i]n making this finding, [he has] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p. [He has] also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 29) However, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [he] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." *Id*.

The ALJ found that Day's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent

with the medical evidence and other evidence in the record." (Tr. 29-30) He first reviewed Day's physical health and made findings broadly consistent with Day's previous RFCs. (Tr. 30-31)

The ALJ then reviewed Day's mental health, specifically his allegations of bipolar and anger issues; feelings of hopelessness, sadness and anger; and his treatment for both. (Tr. 30-32) He mentioned that Day felt irritated about medical testing for chronic headaches but that he was noted to be safe and stable at this visit. (Tr. 32) He also reviewed Day's history of diabetes mellitus. (Tr. 32-33) He concluded that "Mr. Day's complaints have been granted every reasonable benefit of the doubt in findings[.] Mr. Day is limited to light exertional activity with additional postural, environmental and mental limitations. However, any allegations of greater limitations simply cannot [] reasonably be supported by the overall medical evidence." (Tr. 33) The ALJ noted that the mental assessment at the reconsideration level had been given great weight and adopted within the RFC. (Tr. 35) He judged Day unable to perform any past relevant work. *Id*.

At step five of the disability analysis, the ALJ found that there are a significant number of jobs in the national economy that Day can perform. (Tr. 36) He did this by "ask[ing] the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity." *Id*. The ALJ listed small products assembly "when eroding this number by half due to sit/stand option with 17,500 jobs in the national economy"; addresser, with nearly 5000 jobs; and three positions in the optical goods industry totaling 9000 jobs: optical goods final assembler, lens inserter and eyeglass polisher. (Tr. 37) He also stated that the VE recommended that "the assembly type of other work identified would be eroded by approximately 50%." *Id*. He concluded that Day is not disabled under SSR 00-4p without giving a total number of jobs. *Id*.

Standard of Review

To qualify for disability benefits the claimant must demonstrate, through

medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is "more than a mere scintilla but less than a preponderance." *Id*.

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id*.

The Commissioner need not accept the claimant's subjective testimony of disability, but if she decides to reject it, she must justify her decision. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). "[W]ithout affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.

Discussion

1. Step 2 Severity of Day's Migraines

1         Day argues that the ALJ erred in finding Day's migraines to be a non-severe impairment. He cites several occasions when he had to go to the emergency room for pain. (Tr 25 (citing 775-6)) He also points out that under SSR 96-3P, a severe impairment should be found where the symptoms of a malady have more than a minimal effect on work, not just where medical evidence establishes severity. (Doc. 17 at 14)

        The defendant responds that the Ninth Circuit upholds ALJs' disability determinations when claims continue past step two and the ALJ still considers all impairments during steps four and five. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). She supports this by pointing to comments in the record that speak of "careful consideration of the entire record" and that the ALJ has "considered all symptoms." (Tr. 29) Further, she states that Day has not reported issues with headaches since 2014 and that the ALJ considered many other limitations in the step four RFC.

        Day also alleges only that "[a]lthough treated only with medications, these migraines *could reasonably be expected* to cause a reduction in concentration, persistence, and pace, as well as lapses in attendance." (Doc. 17 at 14) (emphasis added) He does not allege that they actually do so, or that the medicine is inadequate. He does not list any further hospital visits since 2014.

        The defendant also states that if there was error, it was harmless because it was not consequential to the disability determination, which is meant to be based on the whole record. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The plaintiff must show that the alleged error "likely… affect[ed] the outcome." *Id*. at 1119-20.

        Day cannot do this purely in a step two context. That is, Day's contention that the ALJ erred in deciding that his migraines are not severe is without merit, and he must instead show that the migraines were disregarded later in the disability determination process.

        In short, the ALJ made a valid determination that Day's migraines were not severe because the record indicates they are under control. Even if this was not true, the error would be harmless because the final disability determination is based on both severe and

non-severe limitations.

2. Step 4 RFC Determination

Day alleges that the ALJ identified how his migraines limit him, but did not factor those limitations into the RFC in step four. He further alleges that the ALJ found moderate concentration, persistence and pace limitations in step two that he did not address in the RFC. (Tr. 28-29) Day contends that his migraines can leave him unable to function for possibly more than a day at a time, and that the ALJ did not take that into consideration.

An ALJ may reject a treating or examining doctor's opinion only by providing specific and legitimate reasons supported by substantial evidence, which can be satisfied with a detailed and thorough summary of the facts and conflicting clinical evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). He errs where he does not explicitly reject a medical opinion, but "rejects [it] or assigns it little weight while doing nothing more than ignoring it." *Id*. at 1012-13. However, "the ALJ is not required to discuss evidence that is neither significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

Here, the ALJ indirectly rejected the migraine issue. He stated that Day was prescribed medicine for them and is "safe and stable." (Tr. 32) The record indicates that the medication was effective in reducing his pain to a manageable level, which would not significantly affect his RFC. (Tr. 758) Neither Day nor his counsel raised the migraine issue during either of his hearings. Day has not reported issues with headaches since he received treatment in 2014. (Doc. 18 at 4) Given that there was no doctor's opinion about continuing migraines, the ALJ did not need to address in detail what was by all appearances no longer an issue. He did not err by not considering Day's migraines in step four, but simply glossed over an issue that evidence indicated was under control.

Day notes that the ALJ determined that "[w]ith regard to concentration, persistence or pace, [Day] has moderate difficulties." (Tr. 28) He argues this finding clashes with the ALJ's later determination that Day can "maintain alertness and close

- 12 -

attention" at a job. (Tr. 29) Even moderate limitations on concentration, persistence and adaptation can seriously impact the ability to work. *Andrews v. Shalala*, 53 F.3d 1035, 1043-44 (9th Cir. 1995)

However, the ALJ accounted for Day's limitations on concentration, persistence and pace in his determination that Day was limited to "basic mental demands of semiskilled work in a low social context." (Tr. 28) The ALJ explained this limitation, remarking that Day's mental abilities as reported in May 2015 support his conclusion that Day can "perform complex duties or tasks, maintain alertness and close attention, [] understand, remember and carry out detailed instructions, and set realistic goals or make plans independently." (Tr. 32)

3. Step 5 Significant Job Numbers

Day's most pressing concern is that the ALJ erred in finding that there is work which exists in the national economy per the definition in 42 U.S.C. § 423(d)(2)(A). This requires that such work "exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id*. The Commissioner must establish job numbers. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). An ALJ meets the burden of establishing job numbers through the testimony of a VE who answers a hypothetical that "contain[s] all of the limitations that the ALJ found credible and [is] supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).

The ALJ found that Day has the RFC to "perform light work as defined in 20 CFR 404.1567(b)… and [that] he have no necessary contact with the general public or customer[s] and not [be] in proximity to 2 or more people" (Tr. 28) The ALJ then concluded from the VE testimony that there are 13,875 jobs in the national economy that Day can perform.

Specifically, the ALJ found Day could perform 17,500 "small products assembly" jobs, eroded by half once for Day's issues sitting or standing and again for his issues with coworkers, leaving 4,375 jobs. Day could also perform 9000 optical goods jobs, eroded

- 13 -

to 4,500 to account for his inability to be near coworkers. Last, Day could perform 5,000 addresser jobs. Added up, this totals 13,875 jobs.

The ALJ, however, misrepresents the testimony of the VE by stating that "[u]pon further questioning the vocational expert… identified that there was no guarantee of the proximity of co-workers to the hypothetical individual and that in his experience the assembly type of other work identified would be eroded by approximately 50%." (Tr. 37) In fact, the VE recommended *eliminating* the assembly jobs altogether, along with most of the addresser positions. (Tr. 65-66) This leaves Day with only a fraction of the 5000 total addresser jobs.

The court finds that the ALJ erred when he said there were 13,875 jobs available to Day. Based on the VE testimony, Day can only perform some unidentified fraction of the 5000 addresser positions.

The lowest number of jobs either party cites as significant is 10,000. *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1987). Relying on *Johnson*, the Ninth Circuit found that 25,000 jobs nationwide was significant.

The Ninth Circuit has "never found a similar number [to 12,600 jobs] significant." *Lemauga v. Berryhill*, 686 F. App'x 420, 422 (9th Cir. 2017). In *Selimovic*, the Arizona District Court found 13,110 jobs was not significant. *Selimovic v. Colvin*, No. CIV 13-1248-PHX-MHB, 2014 WL 4662251, at *10 (D. Ariz. Sept. 18, 2014).

No previous court has found that 5000 jobs is a significant number as required in 42 U.S.C. § 423(d)(2)(A). The ALJ's finding that Day can perform work that exists in significant numbers is not supported by substantial evidence.

4. Remedies

Day seeks remand for calculation and award of benefits. This is appropriate when the plaintiff has satisfied the three-part credit-as-true standard: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence

- 14 -

were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (9th Cir. 2014). In contrast, courts must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id*. at 1021.

Here, the standard has been fulfilled. The record already contains everything necessary to dispose of this case. The ALJ has failed to provide legally sufficient reasons for the number of jobs he believes Day can perform. If the job numbers provided by the VE were credited as true, the ALJ would be required to find the claimant disabled due to lack of significant numbers of jobs.

IT IS ORDERED that the final decision of the commissioner is reversed. The case is remanded for payment of benefits.

The Clerk of the Court is directed to prepare a judgment and close this case.

Dated this 3rd day of July, 2018.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge